UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KIM VASQUEZ,

Plaintiff,

-against-

DETECTIVE CHRIS G. MALONEY, OFFICER
VICTOR CARABELLO, OFFICER BRIAN
DUNNE, OFFICER THOMAS LATORRE,
ORLANDO CRUZ, and BRIAN CALLAHAN,

Defendants.

15-cv-8848 (NSR)

OPINION & ORDER

NELSON S. ROMÁN, United States District Judge:

Plaintiff Kim Vasquez ("Plaintiff") brings this action *pro se* against Detective Chris G. Maloney, Officer Victor Carabello, Detective Orlando Cruz, Officer Brian Dunne, Detective Brian Callahan, and Officer Thomas LaTorre (together, "Defendants") pursuant to 42 U.S.C. § 1983, alleging illegal search and detainer. (*See* Second Amended Complaint ("SAC"), ECF No. 84.) Specifically, Plaintiff alleges that Defendants engaged in a warrantless search and seizure in violation of the First and Fourth Amendments to the United States Constitution as well as state law.

Presently before the Court are (1) Plaintiff's motion to suppress deposition transcripts, (ECF Nos. 103 and 104), and (2) Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 dismissing Plaintiff's Section 1983 claims (ECF No. 113). For the reasons that follow, Plaintiff's motion to suppress is DENIED and Defendants' motion for summary judgment is GRANTED in part and DENIED in part.


USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3|19|2020

**BACKGROUND**

### I.    Factual Allegations

The following facts are taken from the Defendants' Local Civil Rule 56.1 Statement ("Defs. 56.1," ECF No. 116), the parties' affidavits, declarations, and exhibits, and are not in dispute except where so noted.  All rational inferences are drawn in Plaintiff's favor.  *See Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### a.    Plaintiff's Relevant Criminal History

Plaintiff has been arrested multiple times by the Clarkstown Police Department over the past ten years, and found guilty of misdemeanors and felonies, including petty larceny, DWI and criminal possession of a controlled substance.  (Defs. 56.1 ¶ 6; Declaration of Paul E. Svensson ("Svensson Decl."), ECF No. 114, Ex. E ("Pl. 2019 Dep."), Tr. at 37:14–40:14; Plaintiff's Opposition to Defendants' Motion for Summary Judgment ("Pl. Opp."), ECF No. 110 at ¶ 8).

A warrant for the arrest of Plaintiff, dated June 13, 2014, was issued by the Hon. Rolf Thorsen.  (Defs. 56.1 ¶ 9; Svensson Decl., Ex. L.)[1]  Pursuant to the usual and customary practice, notice and a copy of this judicially issued warrant for the arrest of Plaintiff had been published to the Clarkstown Police.[2]  (Defs. 56.1 ¶¶ 8, 10; Svensson Decl., Ex. K, Affidavit of Chris G. Maloney ("Maloney Aff."), at ¶¶ 9–10.)

---

[1] Plaintiff notes that the criminal matter relating to this warrant was sealed.  (Pl. Opp. ¶¶ 10–11.)  Indeed, Defendants attempted to file this document earlier in the case, and on September 7, 2018 the Court issued an Order that the filing be removed from the Court's electronic filing system because it contained sensitive information related to a matter that was previously sealed.  (*See* Order, ECF No. 58.)  The document was subsequently filed under seal.  (*See* ECF Dkt. Entry Dated September 17, 2018.)  The Court notes that the warrant (Exhibits K and L to the Svensson Declaration, ECF No. 114), was properly omitted from Defendants' electronic filings in accordance with the Court's September 7, 2018 Order, and is not publicly accessible.

[2] Plaintiff does not dispute this, but suggests that the Department's usual and customary practice should include notification that a warrant is no longer active.  (*See* Pl. Opp. ¶ 12.)

Plaintiff appeared at the Spring Valley Justice Court on September 23, 2014 to respond to multiple outstanding traffic citations. (Defs. 56.1 ¶ 11; Svensson Decl., Ex. F ("Pl. 2017 Dep."), Tr. at 42:21–44:14; Pl. Opp. ¶ 13.) At that time the Spring Valley Court, in response to two outstanding warrants for Plaintiff's arrest for criminal sale of a controlled substance and criminal possession of a controlled substance, directed Plaintiff to be taken into custody. (Defs. 56.1 ¶ 12; Pl. 2017 Dep. Tr. at 42:21–45:20, 48:15–49:19; Pl. Opp. ¶ 14.) The next day, September 24, 2014, Plaintiff appeared in the Clarkstown Town Court and subsequently appeared before Judge Nelson at the Rockland County Supreme Court for arraignment. (Defs. 56.1 ¶ 13; Pl. 2017 Dep. Tr. at 42:21–45:20, 48:15–49:19; Pl. Opp. ¶ 15.) Plaintiff pleaded guilty to the charge of criminal sale of a controlled substance in March 2015. (Defs. 56.1 ¶ 14; Pl. 2019 Dep. Tr. at 37:14–38:17; Pl. Opp. ¶ 16.)

### b. January 5, 2015 Incident at Target

This case pertains to an incident that occurred on January 5, 2015. (Defs. 56.1 ¶ 1; Maloney Aff. at ¶ 3; SAC ¶ 3; Pl. Opp. ¶ 3.) On this date, the Clarkstown Police Department was conducting an investigation involving the passing of counterfeit money at the Target store located at the Palisades Center Mall in Rockland County, New York. (Defs. 56.1 ¶ 2; Maloney Aff. at ¶ 4; SAC ¶ 3.) Officer Victor Caraballo ("Caraballo"), Officer Thomas La Torre ("LaTorre") and Detective Chris G. Maloney ("Maloney") were located outside the entrance of the Target store in a parking area at the Palisades Center Mall. (Defs. 56.1 ¶ 3; Maloney Aff. at ¶¶ 5–6.) Detectives Orlando Cruz ("Cruz") and Brian Callahan ("Callahan") were inside the security office of the Target store, with store security, monitoring store security cameras. (Defs. 56.1 ¶ 3; Maloney Aff. at ¶ 7.)

While monitoring the security camera as part of the investigation, Detective Cruz saw Plaintiff—who was known to Cruz from his prior work with the Rockland County Drug Task

Force and prior arrests within the Town of Clarkstown—on the store's security camera. (Defs. 56.1 ¶ 5; Maloney Aff. at ¶ 8.) Detective Cruz advised Detective Maloney that Plaintiff was leaving the store and that he believed that there may be a judicially issued warrant for his arrest. (Defs. 56.1 ¶ 7; Maloney Aff. at ¶ 9; Pl. Opp. ¶ 9.) Officer LaTorre approached and spoke with Plaintiff upon Plaintiff's exit from the Target store. (Defs. 56.1 ¶ 15; Maloney Aff. at ¶ 11; Pl. Opp. ¶ 17.)[3]

Plaintiff alleged that "a bunch," or around three, police officers (the "Officers") surrounded him. (Defs. 56.1 ¶ 17; Pl. 2019 Dep. Tr. at 60:2–7; Pl. Opp. ¶ 19.) Plaintiff could not identify any of the Officers, which he explains was because he was not allowed to turn around and look at them. (Defs. 56.1 ¶ 17; Pl. 2019 Dep. Tr. at 60:8–17, 67:25–68:18, 78:7–16; Pl. Opp. ¶ 19.) Plaintiff recalled that they instructed him to "freeze" or "stay still." (Defs. 56.1 ¶ 18; Pl. 2019 Dep. Tr. at 57:25–59:5, 60:18-62:9; Pl. Opp. ¶ 20.)

Plaintiff was placed against a wall, turned around and required to put his hands up. (Defs. 56.1 ¶ 19; Pl. 2019 Dep. Tr. at 61:7–62:17; Pl. Opp. ¶ 21.) Plaintiff was then subjected to a pat down/frisk. (Pl. 2019 Dep. Tr. at 68:24–69:5 (Q: You got patted down; right, did you get frisked? A: I was getting rubbed down, rubbed.);[4] Pl. Opp. ¶ 24.) Plaintiff testified that he did not know how long the frisk lasted, but the duration was a matter of seconds rather than minutes. (Defs. 56.1 ¶ 22; Pl. 2019 Dep. Tr. at 65:6–13; Pl. Opp. ¶ 24.) One of the Officers took his wallet out of his pocket. (Defs. 56.1 ¶ 23; Pl. 2019 Dep. Tr. at 67:6–15; Pl. Opp. ¶ 25).

---

[3] Plaintiff did not recognize which Officer spoke with him, nor did he recall whether it was a Clarkstown Police Officer or Rockland County Sheriff. (Defs. 56.1 ¶ 16; Pl. 2019 Dep. Tr. at 42:6–50:13; Pl. Opp. ¶ 18 ("Plaintiff only can refer to the names given of the Defendants because Plaintiff is not familiar with these officers on a name basis before this incident.")).

[4] *Cf.* Defs. 56.1 ¶ 20; Maloney Aff. at ¶ 13 ("A basic cursory pat down would likely have been conducted to ensure the safety of the Officers and others present in the area.") Plaintiff vehemently disputes this assertion. (*See* Pl. Opp. ¶¶ 22–23.)

Defendants argue that Plaintiff was not mistreated in any manner prior to, during the course of the pat down, or thereafter. (Defs. 56.1 ¶ 21; Maloney Aff. at ¶ 14.) Plaintiff strongly disputes this characterization of the encounter, and describes his treatment as "inhumane." (Pl. Opp. ¶ 23.) Plaintiff admitted that he did not explicitly raise the claim that he was groped or sexually assaulted in either his Complaint or First Amended Complaint, but maintains that such allegations were part and parcel of his descriptions of the unlawful frisk. (Defs. 56.1 ¶ 29; *see* Pl. 2019 Dep. Tr. at 69:16–73:23; Pl. Opp. ¶ 31.)

Plaintiff was detained until it could be verified whether or not the warrant remained open.[5] (Defs. 56.1 ¶ 24; Svensson Decl., Ex. J (audio recordings in which an officer tells Clarkstown Police Dispatcher "I just saw a party who's possibly wanted on some felonies out in front of Target . . . You'll have to check for the warrant."); Maloney Aff. at ¶ 12; Pl. 2019 Dep. Tr. at 76:24–77:3 (Q: At one point, one of the officers told you you were free to leave; is that right? A: Yes.)) Plaintiff estimated that he was released from detention after about two (2) minutes, but he was not certain about this estimate. (Defs. 56.1 ¶ 25; Pl. 2019 Dep. Tr. at 67:20–24; Pl. Opp. ¶ 27).

Plaintiff acknowledged that he had been "pat down" at the time of prior arrests by the Clarkstown Police. (Defs. 56.1 ¶ 26; Pl. 2019 Dep. Tr. at 65:14–67:5; Pl. Opp. ¶ 28.) The contact with Plaintiff is documented on the Detail Call for Service Reports, (Defs. 56.1 ¶ 27; Svensson Decl., Ex. H; Pl. Opp. ¶ 29), and on the CAD Narrative. (Defs. 56.1 ¶ 28; Exhibit G; Pl. Opp. ¶ 30.)

Plaintiff testified during his 2019 deposition that he experiences frequent headaches as a result of the January 5, 2015 incident.[6] (Pl. 2019 Dep. Tr. at 73:25–75:25.) However, Plaintiff

---

[5] Plaintiff correctly notes that there was no open warrant as of January 5, 2015. (*See* Pl. Opp. ¶ 26.)

[6] Plaintiff argues that the deposition transcript makes plain that he sought medication for his head pain. (Pl. Opp. ¶¶ 35–38.) Defendants note that Plaintiff has not provided any medical documentation in the record to support

also testified that he did not seek any medical or psychological treatment specifically relating to the January 5, 2015 encounter with the Clarkstown Police Officers. (Defs. 56.1 ¶ 30; Pl. 2019 Dep. Tr. at 83:15–84:13). Instead, he self-medicated by smoking marijuana. (Pl. 2019 Dep. Tr. at 83:15–22; Pl. Opp. ¶ 32.) Also, Plaintiff testified that he had sought psychological treatment for an incident that occurred before the January 5, 2015 detention. (Defs. 56.1 ¶ 31; Pl. 2019 Dep. Tr. at 88:13–90:7; Pl. Opp. at ¶ 33.)

## II.   Procedural History

Plaintiff commenced this lawsuit *pro se* on November 10, 2015. (*See* Complaint, ECF No. 2.) On January 8, 2016, the U.S. District Judge Loretta A. Preska granted Plaintiff leave to file an amended complaint in order to remedy certain pleading deficiencies. (*See* Order to Amend, ECF No. 6.) Plaintiff filed an Amended Complaint on February 2, 2016. (Amended Complaint, ECF No. 7.) On March 15, 2016, the Court issued a *Valentin* order to assist Plaintiff in identifying the proper John Doe defendants in this action. On September 26, 2016, the Court issued an order further directing counsel for Defendants to engage in more diligent efforts to ascertain the identities of the John Doe defendants. (*See* Order, ECF No. 23.) The Court issued a third order in a similar vein on December 6, 2016. (*See* Order, ECF No. 27.) Counsel for Defendants provided a response on January 30, 2017. (*See* Letter, ECF Nos. 41, Ex. 1.) On April 20, 2018, the Court denied Plaintiff's application to consolidate all of his matters which are currently pending in the Southern District of New York. (*See* Memorandum Endorsement, ECF No. 38.)

On May 15, 2018, the Court instructed Plaintiff to provide additional information to assist Defendants in identifying the correct defendant(s). (*See* Memorandum Endorsement, ECF No.

---

his claims that he receives medication for headaches relating to the subject incident. (Defs. Response in Opposition, ECF No. 122, at 4.)

41.)  Upon receipt of Plaintiff's response, (ECF No. 42), the Court issued a Supplemental Order of Service to assist Plaintiff in effecting service on June 21, 2018.  (*See* Order of Service, ECF No. 43.)

On August 7, 2018, the Clarkstown Police Department filed an Answer to Plaintiff's Amended Complaint.  (*See* Answer, ECF no. 48.)    On September 7, 2018, the Court denied without prejudice Plaintiff's application for *pro bono* counsel, finding no circumstances which warranted the appointment of *pro bono* counsel at that time.  (Memorandum & Order, ECF No. 57.)  That same day, the Court also granted Plaintiff's application to remove certain sensitive, previously-sealed information from the Court's public electronic filing system, but denied Plaintiff's request to levy sanctions against the Defendants.  (Order, ECF No. 58.)  On September 10, 2018, Defendants Victor Caraballo, Brian Dunne, Thomas LaTorre, and Chris G. Maloney filed their Answer.  (*See* Answer, ECF No. 60.)[7]  On October 12, 2018, the Court signed a civil case discovery plan and scheduling order.  (*See* Order, ECF No. 64.)

On September 19, 2018, Plaintiff filed a Second Amended Complaint, which named Defendants Brian Callahan, Orlando Cruz, Victor Caraballo, Brian Dunne, Thomas LaTorre, and Chris G. Maloney.  (*See* SAC, ECF No. 84.)  On December 27, 2018, Defendants filed their Answer to the Second Amended Complaint.  (*See* ECF No. 89.)

Plaintiff was deposed on February 21, 2019.  (*See* Order, ECF No. 95.)  Discovery in this matter was deemed completed on February 28, 2019.  (*See* Dkt. Entry dated February 28, 2019.)

---

[7] These Defendants filed a second Answer, this time including Defendant Orlando Cruz, on October 30, 2018.  (*See* Answer, ECF No. 74.)

On March 14, 2019, upon review of Defendants' pre-motion letter, the Court waived the pre-motion conference requirement and granted Defendants leave to file their motion for summary judgment.  (*See* Memorandum Endorsement, ECF No. 100.)

On April 11, 2018, Plaintiff filed a "Notice of Motion" (ECF No. 103) and "Motion to Suppress Deposition Transcripts" (ECF No. 104.)  Plaintiff followed up with a letter motion on the issue of the deposition transcripts (ECF No. 124), to which Defendants also filed a reply.  (ECF No. 125.)  Plaintiff filed an additional response.  (ECF No. 127.)

Defendants filed their Motion for Summary Judgment on June 13, 2019.  (*See* ECF Nos. 113–117.)  The parties engaged in additional briefing, which concluded on June 13, 2019.  (*See* ECF Nos. 118–123.)

## LEGAL STANDARD

### I.  Summary Judgment

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Id.* at 248.

In deciding a motion for summary judgment, a court must "constru[e] the evidence in the light most favorable to the non-moving party and draw[] all reasonable inferences in its favor."  *Fincher v. Depository Tr. & Clearing Corp.*, 604 F.3d 712, 720 (2d Cir. 2010) (internal quotation marks omitted).  However, a court should grant summary judgment when a party who bears the

burden of proof at trial "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323 (internal quotation marks omitted). "[W]hen confronted with evidence of facts that would support summary judgment, the [nonmoving party] must come forward with evidence in admissible form that is capable of refuting those facts." *George v. Rockland State Psychiatric Ctr.*, No. 10-cv-8091(NSR), 2014 WL 5410059, at *3 (S.D.N.Y. Oct. 23, 2014) (quoting *Wali v. One Source Co.*, 678 F. Supp. 2d 170, 177 (S.D.N.Y. 2009)) (internal quotation marks omitted). The nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation." *F.D.I.C. v. Great Am. Ins. Co.*, 607 F.3d 288, 292 (2d Cir. 2010) (internal citation and quotation marks omitted). Further, "[s]tatements that are devoid of any specifics, but replete with conclusions, are insufficient to defeat a properly supported motion for summary judgment." *Bickerstaff v. Vassar Coll.*, 196 F.3d 435, 452 (2d Cir. 1999).

A party must support its position by citing to materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations admissions, interrogatory answers, or other materials. Fed. R. Civ. P. 56(c)(1). Affidavits may be used to support or oppose summary judgment if the affidavit is "made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Id.* 56(c)(4); *see also DiStiso v. Cook*, 691 F.3d 226, 230 (2d. Cir. 2012). Importantly, a court may only consider facts that are admissible in evidence. *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).

Where, as here, a party is proceeding *pro se*, courts have an obligation to "read [the *pro se* party's] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Perez v. Metro. Corr. Ctr. Warden*, 5 F. Supp. 2d 208, 211 (S.D.N.Y. 1998) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). However, a *pro se* plaintiff, when responding to a motion for summary judgment, is still required to rely on more than the allegations in their complaint. *Wali v. One Source Co.,* 678 F. Supp. 2d 170, 177 (S.D.N.Y. 2009). Moreover, *pro se* plaintiffs cannot overcome a motion for summary judgment by simply making "bald" assertions that are unsupported by the evidence. *Shariff v. Poole*, 689 F. Supp. 2d 470, 476 (S.D.N.Y. 2010).

## II.    42 U.S.C. § 1983 Claims

Section 1983 provides, in relevant part, that: "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes." *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *see Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010). To state a claim under § 1983, a plaintiff must allege two essential elements: "(1) that the defendants deprived him of a right 'secured by the Constitution or laws of the United States'; and (2) that they did so 'under color of state law.'" *Giordano v. City of New York*, 274

F.3d 740, 750 (2d Cir. 2001) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999)).

## DISCUSSION

### I.    Plaintiff's Motion to Suppress the February 21, 2019 Deposition Transcript

Plaintiff seeks to suppress the transcript of his February 21, 2019 deposition on the grounds that: (i) the transcript is incomplete; (ii) the testimony was not conducted before an officer authorized to administer an oath pursuant to Rules 28 and 30 of the Federal Rules of Civil Procedure; and (iii) the parties did not agree to a stipulation to not have the testimony sworn before an officer authorized to administer an oath.  (*See* Notice of Motion, ECF No. 103, at 1.)  Plaintiff also appears to seek sanctions against the Defendants.  (*See* Letter, ECF No. 124, at 5.)  Defendants oppose the motion on the ground that Plaintiff has waived any objections, and that Plaintiff's suppression claims are without merit.  (*See* Defendants' Opposition to Plaintiff's Motion to Suppress, ECF No. 105; Defendants' Reply Affirmation of Paul E. Svensson in Opposition ("Defs. Reply Aff."), ECF No. 125.)  The Court denies Plaintiff's motion for the reasons stated below.

#### a.    Completeness of Transcript

First, Plaintiff contends that the transcript is incomplete because it does not reflect counsel's exchange with a corrections officer regarding pain medication for Plaintiff, nor does it describe Plaintiff's "crying based upon the pain of the memory of this horrific event and experience." (See Plaintiff's Motion to Suppress, ("Pl. Mot. to Suppress"), ECF No. 104 at ¶¶ 10–16.)  The conversation regarding pain medication apparently took place outside of the presence of the court reporter, in a hallway outside the room in which the deposition was being conducted, and with a corrections officer who was unsworn.  (*See* Defs. Reply Aff. at ¶ 7.)  Counsel for Defendants did note the sum and substance of the conversation on the record, stating that "We've asked the

correction officer for Tylenol and he says when we're done you can probably get it." (Defs. Reply Aff. at ¶ 7; Pl. 2019 Dep. Tr. at 76:2–5.) Even if the conversation had occurred in the presence of the court reporter, as Plaintiff argues (*see* Response in Support of Plaintiff's Motion, ECF No. 127, at ¶ 7), under these circumstances, the Court sees no reason why this omission of an off-the-record conversation constitutes an error in the transcript, much less that they were "doctored." (*See* Plaintiff's Reply in Support of Motion to Suppress, ECF No. 107, at ¶¶ 6, 14.)

Furthermore, Plaintiff's argument that his crying during the deposition should have been described or reflected on the record is without merit. (*See* Pl. Mot. to Suppress at ¶ 16.) Federal Rule of Civil Procedure 30(b)(5)(B) provides that, when an officer is conducting the deposition, "[t]he deponent's and attorneys' appearance or demeanor must not be distorted through recording techniques." Consequently, "[t]he [Federal] Rules do not permit the officer before whom the deposition is taken to add his own gratuitous comments on the demeanor of the witness." *Gill v. Stolow*, 16 F.R.D. 9, 10 (S.D.N.Y. 1954); *cf. Ohlson v. The Cadle Co.*, No. CV 04-3418(DRH)(ETB), 2010 WL 811300, at *2 (E.D.N.Y. Mar. 1, 2010) (observing "a video deposition, unlike a typed transcript, allows a jury to consider the demeanor of the witness while testifying.") (quoting Moore's Federal Practice, Third Edition 2009, Vol. 9, § 30.23(1)(b)). Had Plaintiff offered a statement attesting to his conduct for the record, such a statement would have been included in the transcript. But Plaintiff did not do so. Thus, it was not an error for the court reporter to omit her own description of Plaintiff's demeanor during the deposition.

### b. Officer Before Whom Deposition Conducted

Second, Plaintiff claims that his testimony was not conducted before an officer authorized to administer an oath as required by Rule 28(a)(1)(a) of the Federal Rules of Civil Procedure, and that the parties did not agree to a stipulation so permitting. (See Plaintiff's Motion to Suppress,

("Pl. Mot. to Suppress," ECF No. 104 at ¶¶ 3–5.)  Plaintiff appears to take issue with the fact that the court reporter "is a state noterer [sic] and stenographer for the state of New York," and therefore is not authorized to administer federal oaths.  (*See id.* at ¶ 5.)  This is plainly incorrect.  Court reporters and notaries public commonly administer oaths in depositions and are authorized to do so under New York law.  *See* 1 Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary, Rule 28 (updated Feb. 2020) ("In most cases, depositions are taken before an 'officer authorized to administer oaths.'  As a practical matter, this person is almost always a court reporter."); N.Y. Exec. Law § 135 (authorizing notaries public "to administer oaths and affirmations [and] to take affidavits and depositions").

Plaintiff further objects that the transcript does not contain an on-the-record statement that includes: (i) the officer's name and business address; (ii) the date, time, and place of the deposition; (iii) the deponent's name; (iv) the officer's administration of the oath or affirmation to the deponent; and (v) the identity of all persons present, pursuant to Federal Rule of Civil Procedure 30(b)(5)(A).  But this information in clearly present in the first two pages of the deposition transcript.  (*See* Pl. Dep. Tr. at 1–2.)

### c.  Stipulations Regarding Signatures and Objections

Under Federal Rule of Civil Procedure 30(e),

> if the deposition is not signed by the witness within 30 days of its submission to the witness, the officer before whom the deposition was taken may sign, and the deposition 'may then be used as fully as though signed unless on a motion to suppress under Rule 32(d)(4) the court holds that the reasons given for the refusal to sign require rejection of the deposition in whole or in part.'

*Baker v. Ace Advertisers' Serv., Inc.*, 134 F.R.D. 65, 73 (S.D.N.Y. 1991), *report and recommendation adopted*, 153 F.R.D. 38 (S.D.N.Y. 1992).

Here, the deposition transcript was signed by the court reporter, who certified that Plaintiff had been duly sworn for his deposition and that the transcript was a true record of his testimony. (*See* Pl. Dep. Tr. at 104.) Plaintiff, however, maintains that he did not enter into the stipulations that "the sealing and filing of the within deposition be waived; that such deposition may be signed and sworn to before any officer authorized to administer an oath, with the same force and effect as if signed and sworn to before the officer before whom said deposition is taken," and that "all objections, except as to form, are reserved to the time of trial." (*See* Mot. to Suppress at ¶¶ 7–9; Pl. Dep. Tr. at 3). Because the Court has considered and dismissed Plaintiff's substantive objections to the deposition transcript as presented in his motion to suppress, the Court will not reject the deposition in whole or in part. *See Baker*, 134 F.R.D. at 73 (rejecting plaintiff's reasons for his refusal to sign the original deposition transcripts). In conclusion, the Court finds no basis to suppress Plaintiff's February 21, 2019 deposition transcript and Plaintiff's motion must therefore be DENIED.

## II.     Defendants' Motion for Summary Judgment

Liberally construed, Plaintiff's Second Amended Complaint raises claims sounding in the Fourth Amendment's prohibition against unreasonable search and seizure, the First Amendment's free exercise clause, the First Amendment's freedom of association, and state law. These claims are addressed in turn.

### a.      Fourth Amendment Search and Seizure Claims

With respect to the Fourth Amendment claims, Plaintiff's main contentions are that (i) he was stopped and frisked without probable cause, and (ii) the frisk included inappropriate touching. (*See* SAC ¶¶ 9–15.) Defendants argue that the responding officers were acting with probable cause on the understanding that a warrant was outstanding for Plaintiff's arrest, or, in the alternative, that

they had a reasonable suspicion that a crime was or was being committed.  (*See* Defendants' Mem. of Law in Support of Motion for Summary Judgment ("Defs. Mem."), ECF No. 115 at 7–8, 10–13.)  Defendants further assert that the Officers are entitled to qualified immunity with respect to their actions during the encounter with Plaintiff.  (*See id.* at 8–9.)

The Fourth Amendment to the United States Constitution protects citizens' "persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. Amend. IV.  The general contours of a search and seizure under the Fourth Amendment are well-defined.  A search occurs when "the government violates a subjective expectation of privacy that society recognizes as reasonable." *United States v. Lambis*, 197 F. Supp. 3d 606, 609 (S.D.N.Y. 2016) (quoting *Kyllo v. United States*, 533 U.S. 27, 33 (2001)).  A "search" also includes the physical intrusion or trespass upon a person's property for the purpose of obtaining information.  *El-Nahal v. Yassky*, 993 F. Supp. 2d 460, 467 (S.D.N.Y. 2014).   A seizure includes arrest and occurs when, considering all of the circumstances surrounding the encounter, a reasonable person would have believed that she was not free to leave.  *United States v. Glover*, 957 F.2d 1004, 1008 (2d Cir. 1992).  The "ultimate touchstone" for an analysis of the constitutionality of a search or seizure under the Fourth Amendment is reasonableness.  *Riley v. California*, 134 S. Ct. 2473, 2482 (2014).  The reasonableness standard invokes a "'careful balancing of governmental and private interests.'" *Harrell v. City of New York*, 138 F. Supp. 3d 479, 488 (S.D.N.Y. 2015) (quoting *Soldal v. Cook Cnty., Ill.*, 506 U.S. 56, 71 (1992)).

Typically, a search or seizure is not reasonable unless it is conducted pursuant to a warrant issued upon probable cause.  *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 619 (1989).  Warrantless searches may be reasonable in special circumstances, but "must still generally be based upon probable cause."  *Nicholas v. Goord*, 430 F.3d 652, 660 (2d Cir. 2005).  "Probable

cause exists where the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.'" *United States v. Delossantos*, 536 F.3d 115, 158 (2d Cir. 2008) (quoting *Walczyk v. Rio,* 496 F.3d 139, 156 (2d Cir. 2007)).

### i. Whether Officers Had Probable Cause Based on Good Faith Belief in Outstanding Warrant

Here, the parties do not dispute that a warrant for Plaintiff's arrest was issued on June 13, 2014, and that the Clarkstown Police Department had been notified of this warrant. (*See* Defs. 56.1 ¶¶ 8-10; Svensson Decl., Exs. K & L; Maloney Aff. at ¶¶ 9–10.) Nevertheless, the warrant was no longer outstanding as of September 24, 2014—well before the January 5, 2015 encounter. On January 5, 2015, Plaintiff was undisputedly subjected to a search and seizure when he was stopped and frisked, as the parties agree that Plaintiff was detained, patted down, and only allowed to leave after the officers determined the warrant was not outstanding. Thus, the first question before the Court is whether the officers had probable cause to detain and frisk Plaintiff on the mistaken belief that there was an active warrant for Plaintiff's arrest on January 5, 2015.

The Supreme Court has indicated on several occasions that arrests, searches, and/or seizures conducted pursuant to invalid warrants violate the Fourth Amendment. For instance, in *Whiteley v. Warden, Wyo. State Penitentiary*, the Court held that the Fourth Amendment had been violated when police officers arrested the plaintiff and recovered inculpatory evidence based upon a radio bulletin that was later determined to be unsupported by probable cause. 401 U.S. 560, 568–69 (1971). Likewise, in the *Arizona v. Evans* decision, which addressed an issue of evidence suppression, the Court assumed that "an officer who acted in reliance on a police record indicating the existence of an outstanding arrest warrant—a record that is later determined to be erroneous"

violated the Fourth Amendment. 514 U.S. 1, 3–4 (1995). And in *Herring v. United States*, the Court pondered the following situation: "What if an officer reasonably believes there is an outstanding arrest warrant, but that belief turns out to be wrong because of a negligent bookkeeping error by another police employee?" 555 U.S. 135, 136–37 (2009). The Court observed, "The parties here agree that the ensuing arrest is still a violation of the Fourth Amendment." *Id*. at 137.[8]

As an exception to this general rule, some courts have found certain searches to be reasonable under the Fourth Amendment even when those searches are based on flawed warrants. In those cases, officers were found to have probable cause when they relied upon available warrant information that later turned out to be incorrect due to a clerical error or oversight. *See United States v. Miller*, 265 F. App'x 5, 7 (2d Cir. 2008) (explaining that "'arresting officers' reliance on the New York State Police Information Network ("NYSPIN") record to arrest [and subsequently search the plaintiff] was objectively reasonable' even though the warrant later turned out to be invalid") (quoting *United States v. Santa*, 180 F.3d 20, 27 (2d Cir. 1999); *Mason v. Vill. of Babylon, New York*, 124 F. Supp. 2d 807, 815 (E.D.N.Y. 2000) (concluding that "the only information available to the arresting officer at the time of the arrest was communicated to her by the police dispatcher who informed [the officer] that there was an active warrant for the arrest of [plaintiff]. Under these circumstances, [the arrest] was reasonable."). Importantly, these searches were reasonable because the arresting officers utilized all of the information available to them at the time of the arrest. For example, in *United States v. Santa,* the Second Circuit found that the "officers did not know, and had no reason to know, that the warrant had been vacated." 180 F.3d

---

[8] Defendants' citation to *Martinetti v. Town of New Hartford Police Dep't* is inapposite. 112 F. Supp. 2d 251, 252–53 (N.D.N.Y. 2000), *aff'd sub nom. Martinetti v. Town of New Hartford*, 12 F. App'x 29 (2d Cir. 2001). (*See* Defs. Mem. at 8; Defendants' Reply Memorandum in Support of Motion for Summary Judgment ("Defs. Reply Mem."), ECF No. 121, at 6.) *Martinetti* observed that "[a]n arrest pursuant to a *valid* warrant is presumptively made with probable cause." *Id*. at 252–253 (emphasis added). Here, the warrant was not valid as of the date of the relevant search and seizure.

at 27.  The arresting officers consulted the NYSPIN record, had the dispatcher verify that the warrant was still active, and had a copy of the warrant faxed to their department.  *Id.*  These are all steps that a reasonable arresting officer might take to properly verify the existence of an outstanding warrant.

Here, the audio recordings provided by the Clarkstown Police Department include an explicit request to the dispatcher to "check for the warrant" because the requesting officer believed Plaintiff was "possibly wanted on some felonies."  (*See* Svensson Decl., Ex. J.)  This speculative inquiry, and the failure to await confirmation from the dispatcher as to the status of the warrant, distinguish this case from *Miller*, *Santa*, and *Mason*.  Defendants cannot point to a clerical error or system malfunction to justify their belief that an open warrant was outstanding.  While "law enforcement agents will not be punished for errors that lie outside of their control, especially when they have to act quickly," "[a]gents will be faulted for failing to consult relevant databases when conducting warrant checks."  *United States v. Stroke*, No. 14-CR-45S, 2019 WL 1960207, at *20 (W.D.N.Y. May 2, 2019).  Here, Defendants failed to wait the very brief period of time needed for the dispatcher to ascertain the status of any warrants issued for Plaintiff's arrest.  Despite Defendants' argument that they were acting under the good-faith belief that a valid arrest warrant was outstanding, the Court finds the Defendants' decision to conduct a search and seizure of Plaintiff before confirming the status of the warrant was not reasonable as a matter of law.

### ii.    Whether Officers Had Reasonable Suspicion of Criminal Activity

Even if an officer lacks "probable cause," an officer may still detain an individual "for investigative purposes if the officer has a reasonable suspicion supported by articulable facts that criminal activity 'may be afoot . . . .'"—otherwise known as a "*Terry* stop."  *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quoting *Terry v. Ohio*, 392 U.S. 1, 30 (1968)).  Under *Terry v. Ohio*, an officer may briefly detain and question, or conduct a pat down frisk of an individual if

they have reasonable suspicion that criminal activity is occurring. 392 U.S. at 30.

With respect to ascertaining whether an officer has reasonable suspicion, "the proper inquiry is not whether each fact considered in isolation denotes unlawful behavior, but whether all the facts taken together support a reasonable suspicion of wrongdoing." *United States v. Lee*, 916 F.2d 814, 820 (2d Cir. 1990) (citing *Sokolow*, 490 U.S. at 8; *United States v. Cortez*, 449 U.S. 411, 417–18 (1981)). The inquiry is an objective one—"the subjective intentions or motives of the officer making the stop are irrelevant." *Floyd v. City of New York*, 861 F. Supp. 2d 274, 288 (S.D.N.Y. 2012) (quoting *United States v. Bayless*, 201 F.3d 116, 133 (2d Cir. 2000)); *see also United States v. Padilla*, 548 F.3d 179, 187 (2d Cir. 2008) (an officer "may not rely on an 'inchoate and unparticularized suspicion or 'hunch'") (quoting *Terry*, 392 U.S. at 27). Nevertheless, officers are permitted "to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.'" *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quoting *Cortez*, 449 U.S. at 418). "Therefore, courts evaluate the circumstances surrounding the stop 'through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training.'" *Padilla*, 548 F.3d at 187 (quoting *Bayless*, 201 F.3d at 133).

Defendants argue that the following factors weigh in favor of establishing the officers' reasonable suspicion: (i) Plaintiff was known to them based upon his many prior arrests, including an arrest involving criminal possession of a controlled substance; (ii) Plaintiff was believed to be the subject of a judicial warrant for his arrest; and (iii) the Palisades Mall was a location where the police were conducting an investigation for counterfeit activities, and as a large public area, played a role in the officers' decision to conduct a pat down to ensure that there was no danger to the officers or public in the area. (*See* Defs. Mem. at 12–13.)

This is not enough to justify a *Terry* stop. *Compare United States v. Padilla*, 548 F.3d 179, 187 (2d Cir. 2008) (observing "ostensibly suspicious" manner of two men walking behind another man in a "isolated, dark path" in a "high-crime neighborhood" caused reasonable suspicion that criminal conduct—either a robbery or a drug deal—was "about to take place,") and *United States v. Bayless*, 201 F.3d 116, 134 (2d Cir. 2000) (finding "the strange behavior of the men who loaded the duffel bags into the trunk of her car . . . is itself an appropriate and weighty factor. The speed with which the men loaded the bags into the trunk and dissociated themselves from the car, together with the absence of any communication between the driver and the men, provide a specific basis for the police officers' suspicion that they were witnessing an illicit transaction that the participants did not want to prolong") with *United States v. Swindle*, 407 F.3d 562, 569 (2d Cir. 2005) ("[T]he officers had merely observed an unidentified black man drive up to the drug house in a Bonneville (a model the police associated with [a wanted drug dealer]), enter the house, leave a short while later and then drive away. This is not enough information on which to reasonably order a person to stop.").

In the instant case, Defendants did not identify any aspects of the surrounding area, Plaintiff's appearance, behavior, or actions that would give a reasonable and cautious police officer suspicion that anything outside of the ordinary was afoot. Although Defendants were in the vicinity of the Target to investigate counterfeit activities, they have made no suggestion that Plaintiff was in any way linked to such investigation or related activities. A subject's prior criminal history, without any other indicium of illicit activity, cannot be used as a blanket justification for a *Terry* stop. *See Brown v. Texas*, 443 U.S. 47, 52 (1979) (finding officer lacked reasonable suspicion where officer only provided vague testimony that a situation in an alley "looked suspicious."). A contrary ruling would essentially place a target on Plaintiff's back and empower

law enforcement to stop Plaintiff—despite his innocuous manner or setting—for the rest of his life.  Such an outcome is unacceptable.

### iii.    Whether the Pat Down Contained Inappropriate Contact

Plaintiff's claim regarding inappropriate contact also sounds in the Fourth Amendment.  "'[U]nreasonable, non-consensual, inappropriate touching' can constitute 'unreasonable intrusions into a plaintiff's bodily integrity in violation of the Fourth Amendment.'" *Golden v. Cty. of Westchester*, No. 10-CV-8933, 2012 WL 4327652, at *5 (S.D.N.Y. Sept. 18, 2012) (alterations omitted) (quoting *Fontana v. Raskin*, 262 F.3d 871, 880–81 (9th Cir. 2001)).  Plaintiff maintains that the Officers committed misconduct during the January 5, 2015 pat down, during which he claims the Officers patted, rubbed, and frisked him, "touching and jostling his body parts, including his private parts" in a "very intrusive" way.  (*See* SAC ¶¶ 9, 21.)  Defendants describe the frisk as a "basic cursory pat down" and maintain that "at no time was [Plaintiff] mistreated in any manner."  (Defs. 56.1 ¶¶ 20–21; Maloney Aff. at ¶¶ 13–14.)

It is undisputed that the frisk lasted a matter of seconds rather than minutes.  (Defs. 56.1 ¶ 22; Pl. 2019 Dep. Tr. at 65:6–13; Pl. Opp. ¶ 24.)  "Courts in the Second Circuit have consistently held that such brief contact [of several seconds] with an arrestee's . . . genital area during a pat-down, without more, is insufficient to violate the Fourth Amendment."  *Scalpi v. Amorim*, No. 14-CV-2126 (KMK), 2018 WL 1606002, at *18 (S.D.N.Y. Mar. 29, 2018), *appeal dismissed* (June 12, 2018) (collecting cases).  As the Supreme Court has recognized, a search of a suspect may include "a careful exploration of the outer surfaces of a person's clothing all over his or her body . . . [including] arms and armpits, waistline and back, the groin and area about the testicles, and entire surface of the legs down to the feet."  *Terry v. Ohio*, 392 U.S. 1, 16, 17 n .13 (1968).  Here, Plaintiff has not presented any evidence in the record to indicate that the contact was of a

sexual nature.[9]  Because the factual basis for this claim—even when construed in the light most favorable to Plaintiff—does not rise to the level of a constitutional violation, it must be dismissed.  *See Scalpi*, 2018 WL 1606002, at *18–20 (granting defendant's motion for summary judgment with respect to a pat down in which contact with the plaintiff's genitals was brief and was not conducted in a sexual manner.)

### iv.    Whether the Officers Are Entitled to Qualified Immunity

Even though the Court has found that Plaintiff's Fourth Amendment claims regarding unreasonable search and seizure survive summary judgment, it must consider Defendants' affirmative defense of qualified immunity.  The doctrine of qualified immunity gives officials 'breathing room to make reasonable but mistaken judgments about open legal questions.'"  *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1866 (2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).  As such, "qualified immunity shields both state and federal officials from suit unless [1] the official violated a statutory or constitutional right that [2] was clearly established at the time of the challenged conduct."  *Terebesi v. Torreso*, 764 F.3d 217, 230 (2d Cir. 2014) (internal quotation marks omitted).  As discussed above, the Court has determined that the first element is met:  Defendants violated Plaintiff's Fourth Amendment right to be free from unreasonable searches and seizures.

Turning to the second element, to determine whether a right was clearly established, the Court looks to: (1) whether the right was defined with "reasonable specificity"; (2) whether the Supreme Court and the applicable circuit court support the existence of the right; and (3) whether

---

[9] By contrast, when a plaintiff alleges sexual misconduct, "[t]he result is a 'he said, she said' account on which courts tend not to take a side at the summary judgment stage."  *Santiago v. City of Yonkers Yonkers*, No. 13-CV-1077 TPG, 2015 WL 6914799, at *7 (S.D.N.Y. Oct. 30, 2015); *see also Anderson v. Waterbury Police Dep't*, No. 14-CV-829, 2017 WL 1157843, at *11 (D. Conn. Mar. 28, 2017) ("[C]ourts in [the Second] Circuit have found that claims that police officer's actions during and following the arrest of a suspect rise to the level of a sexual assault are properly analyzed under the Fourth Amendment and could give rise to at least one genuine issue of material fact that precludes summary judgment on the Fourth Amendment claim.") (internal quotation marks omitted).

under existing law a reasonable defendant would have understood that the conduct was unlawful. *See Gonzalez v. City of Schenectady*, 728 F.3d 149, 161 (2d Cir. 2013). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011).

"In cases alleging unreasonable searches or seizures, we have instructed that courts should define the 'clearly established' right at issue on the basis of the specific context of the case." *Tolan v. Cotton*, 572 U.S. 650, 657 (2014). "'[I]f officers of reasonable competence could disagree' as to whether probable cause existed," that is, whether arguable probable cause exists, "immunity should be recognized." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986)). "But if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that probable cause existed, defendants will not be immune[.]" *Zellner*, 494 F.3d at 367 (quotations and citation omitted).

It is well-settled that "[e]xcept in certain well-defined circumstances, a search or seizure . . . is not reasonable unless it is accomplished pursuant to a judicial warrant issued upon probable cause." *Skinner v. Ry. Labor Executives' Ass'n*, 489 U.S. 602, 619 (1989). Under existing law discussed above, a reasonable officer would have understood that it was unlawful to search Plaintiff without first attempting to obtain more information regarding the warrant. And to the extent the encounter is viewed as a *Terry* stop, it is similarly well-settled that a reasonable suspicion of criminal activity requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *Padilla*, 548 F.3d at 187 (2d Cir. 2008) (quoting *Terry*, 392 U.S. at 27). Accordingly, the branch of Defendants' motion seeking summary judgment on this Fourth Amendment claim on the basis of qualified immunity is denied.

### b. First Amendment Claims

#### i. Religious Freedom

Defendants argue in their briefing that the police are entitled to qualified immunity on Plaintiff's First Amendment religious freedom claim. (*See* Defs. Mem. at 13–14.) But while Plaintiff may have included First Amendment claims in his original pleadings, the operative complaint, ECF No. 84, does not appear to include any allegations regarding Plaintiff's religion or exercise of religious freedom. (*See generally* SAC.) Plaintiff's summary judgment briefing clarifies that he "had been a practicing Muslim" and that the January 5, 2015 incident "totally destroyed the Plaintiff's taint-free image, and religious 'Imam' of his household." (Pl. Opp. 49.) There is nothing in the record to indicate that the Officers were aware of Plaintiff's religion, or that their actions were in any way motivated by his religion.

"When a plaintiff claims his rights under the Free Exercise Clause have been violated, he must demonstrate that the official conduct at issue operated coercively against him 'in the practice of his religion.'" *Indig v. Vill. of Pomona*, No. 18 CV 10204 (VB), 2019 WL 6173425, at *8 (S.D.N.Y. Nov. 19, 2019) (quoting *Harris v. McRae*, 448 U.S. 297, 321 (1980)). "Absent some demonstration that the purpose of the defendants' challenged actions was to impugn . . . or to restrict their religion practices . . . a Free Exercise claim will be sustained only if the government has placed a substantial burden on the observation of a central religious belief, without a compelling governmental interest justifying the burden." *Newdow v. United States*, 2013 WL 4804165, at *4 (S.D.N.Y. Sept. 9, 2013), *aff'd sub nom. Newdow v. Peterson*, 753 F.3d 105 (2d Cir. 2014). Here, even after drawing all rational inferences in Plaintiff's favor, Plaintiff has not pointed to any evidence, other than conclusory allegations, that would suggest that the Officer's stop substantially burdened his observation of a central religious belief. As such, this claim fails

as a matter of law. The Court therefore GRANTS Defendants' motion as to this First Amendment claim.

### ii. Intimate Association

Plaintiff's complaint may also be liberally read to assert a claim regarding the freedom of intimate association with regard to his wife and daughters. The First Amendment protects the freedom of intimate association, which includes "choices to enter into and maintain certain intimate human relationships" including "those that attend to the creation and sustenance of family." *Roberts v. U.S. Jaycees*, 468 U.S. 609, 617–19 (1984).[10] The standards for evaluating an intimate association claim are varied:

> Sometimes court opinions suggest that an intimate association right is not violated unless the challenged action has the likely effect of ending the protected relationship, . . . or unless affecting the relationship was the purpose of the challenged regulation. In other cases, the opinions consider whether the challenged action alleged to burden an intimate association is arbitrary or an "'undue intrusion' by the state into the marriage relationship."

*Adler v. Pataki*, 185 F.3d 35, 43–44 (2d Cir. 1999) (citations omitted). In any case, "[t]he husband/wife and parent/child relationships are obviously among the most intimate" and "receive the greatest degree of protection." *Patel v. Searles*, 305 F.3d 130, 136 (2d Cir. 2002).

---

[10] The *Roberts* court rooted the right of intimate association in both the First Amendment and the Fourteenth Amendment's due process clause. Subsequently, there has been a question as to the Constitutional source of the right – whether it is the First or Fourteenth Amendment. *See Adler v. Pataki*, 185 F.3d 35, 42 (2d Cir. 1999) ("The source of the intimate association right has not been authoritatively determined.") However, in *Adler*, the Second Circuit suggested that courts have generally analyzed claims that some adverse state action burdens an individual marital relationship under a First Amendment doctrine of marital association, as opposed to broader regulations affecting a class of burdened persons, which have been analyzed under equal protection and due process clauses. (*Id.* 43.) As such, the Court will analyze Plaintiff's claims under the First Amendment. *Stalter v. Cty. of Orange*, 345 F. Supp. 3d 378, 389 (S.D.N.Y. 2018)

To the extent that Plaintiff's claim sounds under the Fourteenth Amendment's substantive due process framework, such a claim must also fail. "To state a claim for a violation of this substantive due process right of custody [of a child], a plaintiff must demonstrate that the state action depriving him of custody was 'so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection.'" *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir. 2011) (quoting *Tenenbaum v. Williams*, 193 F.3d 581, 600 (2d Cir. 1999)). Even considered in the light most favorable to Plaintiff, his claims clearly do not rise to this level.

The record does not indicate that Plaintiff's relations with his wife and children have been sufficiently impaired by Defendants' conduct to implicate the right to intimate association. Plaintiff has suggested that the incident "painted a belittling picture in his innocent daughters['] minds of their role model father" and "caused confusion to the famil[y's] perspective of their father, also safety." (SAC ¶¶ 16, 20.) Furthermore, Plaintiff asserts that he was prevented from kissing his wife hello. (Pl. Opp. at ¶ 50.) There is, however, no suggestion that any action was taken against Plaintiff's wife and children in retaliation for Plaintiff's conduct. *See Adler*, 185 F.3d at 44 ("[A] spouse's claim that adverse action was taken solely against that spouse in retaliation for conduct of the other spouse should be analyzed as a claimed violation of a First Amendment right of intimate association."); *Miron v. Town of Stratford*, 976 F. Supp. 2d 120, 147 (D. Conn. 2013) (collecting cases). While the Court does not doubt that the police encounter was unimaginably difficult for Plaintiff's family to witness, the record does not support that a First Amendment violation occurred. Accordingly, the Court therefore GRANTS Defendants' motion as to this First Amendment claim.

### c.    State Law Claims

Plaintiff's complaint may also be read to imply claims of intentional infliction of emotional distress and/or assault. These claims are address in turn.

#### i.    Intentional Infliction of Emotional Distress

To succeed on a claim of intentional infliction of emotional distress under New York law, a plaintiff must demonstrate "(1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *Bender v. City of New York*, 78 F.3d 787, 790 (2d Cir. 1996). Claims for intentional infliction of emotional distress are "highly disfavored" under New York law. *Williams v. City of Mount Vernon*, 428 F. Supp. 2d 146, 160 (S.D.N.Y. 2006) (citation omitted). To

establish such claims, a plaintiff must show that the defendant's conduct has been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Chanko v. Am. Broad. Companies Inc.*, 27 N.Y.3d 46, 56 (N.Y. 2016) (quoting *Murphy v. Am. Home Prods. Corp.*, 58 N.Y.2d 293, 303 (N.Y. 1983)). Moreover, any allegations of suffering from severe emotional distress must be supported with objective medical evidence rather than speculative claims. *Allam v. Meyers*, 906 F. Supp. 2d 274, 282 (S.D.N.Y. 2012) (citing *Roche v. Claverack Coop. Ins. Co.*, 59 A.D.3d 914, 919 (N.Y. App. Div. 2009)); *Walentas v. Johnes*, 257 A.D.2d 352, 353 (N.Y. App. Div. 1999); *Christenson v. Gutman*, 249 A.D.2d 805, 808–09, (N.Y. App. Div. 1998)).

The record is devoid of any evidence demonstrating that any of the Defendants performed an intentional act with the purpose of causing or disregarding a substantial probability of causing severe emotional distress. Similarly, Plaintiff's allegations of emotional distress find no objective medical support in the record, other than Plaintiff's own testimony regarding headaches and self-medication. Instead, Plaintiff testified that he did not seek any medical or psychological treatment specifically relating to the January 5, 2015 encounter with the Clarkstown Police Officers. (Defs. 56.1 ¶ 30; Pl. 2019 Dep. Tr. at 83:15–84:13). Accordingly, the Court concludes that there is no genuine dispute of material fact and Plaintiff's claim for intentional infliction of emotional distress fails as a matter of law.

### ii. Assault and Battery

To the extent that Plaintiff asserts a claim against Defendants for state law assault and battery, assault and battery claims against a police officer under New York law are governed by the Fourth Amendment excessive force standard. *See Humphrey v. Landers*, 344 Fed. App'x 686, 688 (2d Cir. 2009) ("Except for [Section] 1983's requirement that the tort be committed under color of state law, the essential elements of excessive force and state law assault and battery claims

are substantially identical.") (quoting *Posr v. Doherty*, 944 F.2d 91, 94–95 (2d Cir. 1991)) (internal quotation marks and brackets omitted).

Where a plaintiff claims that law enforcement officers used excessive force against him in violation of his Fourth Amendment rights, "a court must determine 'whether the officers' actions are "objectively reasonable" in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.'" *Wims v. N.Y. City Police Dep't*, 10-CV-6128 (PKC), 2011 WL 2946369, at *4 (S.D.N.Y. July 20, 2011) (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). Courts must make this determination from the perspective of a reasonable officer on the scene, considering what the officer knew at the time, not "with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396; *see also id.* at 397 ("Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."). The inquiry is "case and fact specific and requires balancing the nature and quality of the intrusion on the plaintiff's Fourth Amendment interests against the countervailing governmental interests at stake." *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010). Considerations bearing on the reasonableness or unreasonableness of the force used include, but are not limited to "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Tracy*, 623 F.3d at 96 (2d Cir. 2010) (citing *Graham*, 490 U.S. at 396).

To be sure, the considerations here indicate that limited force was needed—the officers believed a drug-related arrest warrant was open for Plaintiff, there were no indications that Plaintiff posed an immediate threat, other than his criminal history, and Plaintiff did not actively resist arrest. The record reflects that the Officers, for their part, used limited force in conducting the pat

down. A standard pat down does not constitute excessive force. *See, e.g., Ramirez v. City of New York*, No. 16 CIV. 4174 (ER), 2018 WL 4189511, at \*8 (S.D.N.Y. Aug. 31, 2018) (concluding "the constitution does not prohibit [this] type of 'brief contact'" and granting summary judgment on excessive force claim). The Court finds that Defendants' use of force was not objectively unreasonable under the constitutional standard, therefore, Plaintiff's state law assault and battery claim fails as a matter of law.

The Court therefore GRANTS Defendants' motion as to Plaintiff's state law claims of intentional infliction of emotional distress and assault and battery.

## CONCLUSION

For the forgoing reasons, Plaintiff's motion to suppress is DENIED. Defendants' motion for summary judgment is GRANTED in part and DENIED in part. Summary judgment is granted on the following of Plaintiff's claims against Defendants:

- Inappropriate contact under the Fourth Amendment;
- Religious freedom and intimate association claims under the First Amendment; and
- State law claims.

Plaintiff's claim of unreasonable search and seizure under the Fourth Amendment remains. The Clerk of the Court is respectfully directed to terminate the motions at ECF Nos. 103, 104, and 113 and to mail a copy of this Opinion and Order to the Plaintiff at the address listed on ECF.

The parties are directed to confer, and then complete and submit to the Court the attached case management plan on or before May 1, 2020.

Dated:   March 19, 2020                                    SO ORDERED:
         White Plains, New York

                                                         NELSON S. ROMÁN
                                                      United States District Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

Rev. May 2014

-------------------------------------------------------------x

Plaintiff(s),

- against -

**CIVIL CASE DISCOVERY PLAN
AND SCHEDULING ORDER**

Defendant(s).          _____ CV _____ (NSR)

-------------------------------------------------------------x

This Civil Case Discovery Plan and Scheduling Order is adopted, after consultation with counsel, pursuant to Fed. R. Civ. P. 16 and 26(f):

1.  All parties [consent] [do not consent] to conducting all further proceedings before a Magistrate Judge, including motions and trial, pursuant to 28 U.S.C. § 636(c). The parties are free to withhold consent without adverse substantive consequences. (If all parties consent, the remaining paragraphs of this form need not be completed.)

2.  This case [is] [is not] to be tried to a jury.

3.  Joinder of additional parties must be accomplished by _____.

4.  Amended pleadings may be filed until _____. Any party seeking to amend its pleadings after that date must seek leave of court via motion.

5.  Interrogatories shall be served no later than _____, and responses thereto shall be served within thirty (30) days thereafter.  The provisions of Local Civil Rule 33.3 [shall] [shall not] apply to this case.

6.  First request for production of documents, if any, shall be served no later than

    _____.

7.  Non-expert depositions shall be completed by _____.

    a.  Unless counsel agree otherwise or the Court so orders, depositions shall not be held until all parties have responded to any first requests for production of documents.

    b.  Depositions shall proceed concurrently.

    c.  Whenever possible, unless counsel agree otherwise or the Court so orders,

non-party depositions shall follow party depositions.

8. Any further interrogatories, including expert interrogatories, shall be served no later than _____.

9. Requests to Admit, if any, shall be served no later than _____.

10. Expert reports shall be served no later than _____.

11. Rebuttal expert reports shall be served no later than _____.

12. Expert depositions shall be completed by _____.

13. Additional provisions agreed upon by counsel are attached hereto and made a part hereof.

14. **ALL DISCOVERY SHALL BE COMPLETED BY** _____.

15. Any motions shall be filed in accordance with the Court's Individual Practices.

16. This Civil Case Discovery Plan and Scheduling Order may not be changed without leave of Court (or the assigned Magistrate Judge acting under a specific order of reference).

17. The Magistrate Judge assigned to this case is the Hon. _____.

18. If, after entry of this Order, the parties consent to trial before a Magistrate Judge, the Magistrate Judge will schedule a date certain for trial and will, if necessary, amend this Order consistent therewith.

19. The next case management conference is scheduled for _____, at _____. (The Court will set this date at the initial conference.)

SO ORDERED.

Dated: White Plains, New York
_____

_____
Nelson S. Román, U.S. District Judge